The First National Securities Company of Barrington, Illinois, Appellant, v. Fred H. Ward and Bereniece Ward, His Wife, Appellees.

**Gen. No. 37,122.**

Opinion filed June 15, 1934.

ECKERT & PETERSON, for appellant; WILLIAM U. BARDWELL, of counsel.

BLECH & HERSON, for appellees; LEONARD GORDON, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

In a first class action in assumpsit, commenced in the municipal court of Chicago on May 3, 1932, and based upon a written contract for the purchase by defendants of certain improved real estate in Lake county, Illinois, there was a trial without a jury during June, 1933, resulting in the court finding the issues against plaintiff, and on July 12, 1933, entering judgment on the finding against plaintiff for costs. The present appeal followed.

In plaintiff's amended statement of claim filed September 21, 1932, it is alleged in substance:

1. That on July 25, 1929, Edward B. Erickson and wife, as first parties, and defendants, as second parties, entered into a contract whereby defendants agreed to purchase from the Ericksons certain real estate (describing it), and to pay to them therefor the sum of $12,600, payable by the assumption of a first mortgage of $8,000, and by the payment of $4,608 in monthly instalments; that on March 8, 1930, the contract "was amended by increasing the purchase price to $12,983," payable by the assumption of said first mortgage, "and by the payment of $4,983, payable $90 on the first day of each and every month thereafter until the expiration date of said mortgage, when the unpaid balance became due and payable, with interest at 6 per cent per annum, payable monthly." (Copy of contract, as amended, attached to and made a part of the statement of claim.)

2. That on January 20, 1931, the Ericksons assigned the contract as amended to plaintiff. (Copy of the written assignment attached to and made a part of the statement of claim.)

3. That defendants paid all monthly instalments of $90, up to and including the one due on April 1, 1931.

4. That payments for the 12 months, from May, 1931, to April, 1932, inclusive, are past due and have not been paid.

5. That because of the nonpayment of the 12 instalments there is due to plaintiff the sum of $1,080, plus interest.

6. That defendants also failed to pay the instalment due on May 1, 1932, in the sum of $90, "which sum is not included in the amount claimed by plaintiff herein"; that because of the default in the payment of said one instalment due May 1, 1932, "plaintiff, after the filing of the instant cause, commenced forcible detainer proceedings in a justice court for Cuba township, Lake County, Illinois, and on June 23, 1932, *secured judgment for possession* of said premises, and on June 28, 1932, *obtained possession* of said premises"; and that "said proceedings do not abate or bar this proceeding."

From the copy of the contract as amended, attached to and made a part of plaintiff's statement of claim, it appears that it is dated July 25, 1929; that the Ericksons are designated as first parties and defendants (the Wards) as second parties; and that some of its provisions are as follows in substance:

That if the second parties (the Wards) shall "first make the payments and perform the covenants hereinafter mentioned," to be made and performed by them, the "first parties (the Ericksons) covenant and agree to convey or cause to be conveyed" to the second parties, in fee simple, by good and sufficient warranty deed, the real estate in question (describing it), subject to taxes for the year 1929 and subsequent years, special assessments, building line restrictions, etc., and also "subject to a first mortgage of $8,000, dated —————, due five years after date thereof, bearing interest at the rate of 6 per cent per annum, payable semi-annually," which mortgage "said second parties

assume and agree to pay as a part of the purchase price hereof, which is $12,983.''

That in addition to paying said mortgage, the ''second parties agree to pay to said first parties, at the office of the First National Bank, Barrington, Illinois, . . . the sum of $4,983, with interest at 6 per cent per annum, payable monthly, viz., $90 on October 1, 1929, and $90 on or before the first day of each month succeeding thereafter, until the expiration date of the first mortgage, when the unpaid balance shall become due and payable.''

''That if said second party fails to make either of the payments, or any part thereof, or fails to perform any of the covenants on the part of said second party hereby made and entered into, this contract shall, *at the option of said first party,* be forfeited and determined and said second party shall forfeit all payments *made* on this contract, and such payments shall be *retained* by said first party *in full satisfaction and in liquidation of all damages sustained,* and said first party shall have the right to re-enter and take possession of the premises aforesaid; *or,* if said second party fails to make either of the payments or any part thereof, as hereinbefore agreed, and if said default shall continue for the period of sixty days, then at the option of first party all of the deferred payments hereunder shall become and be immediately due and payable.''

In defendants' affidavit of merits, filed November 23, 1932, they admitted the execution of said contract as amended, but denied plaintiff's right to maintain the present action. They alleged that on June 17, 1932, plaintiff commenced a forcible detainer suit against defendants before a justice of the peace in Lake county; that defendants were served with process in the suit; that a hearing was had on June 23, 1932, and said justice found in favor of plaintiff and rendered

judgment in its favor for the possession of the real estate in question; that on July 29, 1932, defendants *surrendered possession* of the property, and that by reason thereof and because of the express terms of said amended contract "the same operated in full satisfaction and in liquidation of all damages sustained and in full of all claims for rent thereunder"; that by reason of plaintiff's re-entry and taking of possession, and because of the terms of the contract, "said contract was forfeited and determined by plaintiff, and all of its terms and provisions were likewise terminated, and no action can be maintained at law upon the contract." And defendants denied that they are now indebted to plaintiff in said sum of $1,080, or in any sum, by reason of the contract.

The bill of exceptions discloses that at the beginning of the trial defendants' attorney stated that he was willing to admit the allegations of plaintiff's amended statement of claim, but that he wished to introduce on defendant's behalf three exhibits, viz., (1 and 2) two notices served by plaintiff on defendants and (3) a photostatic copy of the forcible detainer proceedings before the justice of the peace of Lake county. Thereupon plaintiff's attorney admitted that the two written notices had been signed by plaintiff and served by it on defendants on the days of their respective dates, and that the copy of the forcible detainer proceedings was correct. The exhibits (hereinafter mentioned) were admitted in evidence, and no further evidence was offered by either party. Thereupon, after arguments of counsel, *plaintiff* submitted to the court two "special findings and holdings," the first of which was marked, "Held," but the second was marked "Refused," viz.:

"The court finds that plaintiff forfeited the contract sued upon, on account of defendant's failure to pay the installment due May 1st, 1932," (Held)

"The court holds that, under the contract sued upon, plaintiff is entitled to recover for unpaid payments which accrued prior to the time that said contract was forfeited." (Refused)

Defendants' Exhibits 1 and 2 are written notices of plaintiff, dated and served on defendants, respectively, on "April 23, 1932," and "May 7, 1932," in substance as follows:

(Exhibit 1.) Please take notice that, *"beginning with the payment which is due on May 1, 1932,"* by the terms of your agreement with the Ericksons, dated July 25, 1929, for the purchase by you of the real estate (describing it), which agreement has been assigned to the undersigned, "and continuing with every payment due thereafter, we shall request you to comply with the terms of said agreement, and make payment on the day specified therein; time shall be of the essence commencing with said payment. This notice is given in lieu of notice heretofore given demanding possession of said premises."

(Exhibit 2.) Please take notice that because of your failure to pay the instalment of $90, "due to the undersigned on May 1, 1932," by virtue of your agreement with the Ericksons for the purchase of the premises (describing them), which agreement has been assigned to us, "and as demanded in our notice to you, dated April 23, 1932," the undersigned *"has elected to forfeit and determine said contract,"* and *"because of said forfeiture and determination,* hereby demands immediate possession of the following premises" (describing them).

You will please take notice that upon your failure to surrender possession thereof immediately in compliance with this notice, a proceeding under the provisions of section 3, chapter 57 of the Illinois Statutes (1931) will be instituted. This notice is given to you by virtue of the requirements of chapter 57 of said statutes.

From said Exhibit 3 it appears that said forcible detainer suit was commenced by plaintiff before said justice of the peace against defendants on June 17, 1932; that after service of process the case was heard on June 23, 1932, the parties being present in court; and that the court adjudged that "plaintiff have execution for the recovery from defendants (the Wards) the *possession* of the following described property" (describing it), and that the writ of restitution be stayed for five days.

As grounds for a reversal of the judgment in the present case, plaintiff's counsel contend that, by reason of the contract sued upon, "defendants owe to it the payments due from May 1, 1931, to April 1, 1932, inclusive, (or $1,080); that inasmuch as plaintiff commenced suit for those payments on *May 3, 1932,* and did not forfeit the contract because of defendants' failure to make those payments but *forfeited it on May 7, 1932,* because of defendant's failure to pay the installment *due on May 1, 1932,* plaintiff has a good cause of action against defendants for the unpaid installments *accruing before May 1, 1932;* and that this right of action is not taken away because plaintiff subsequently recovered possession of the property because of a default which occurred after the installments herein sued for had become due."

Counsel for defendants, in urging the affirmance of the judgment appealed from, contend that "no recovery can be had upon any contract for unpaid installments *if the contract has been forfeited by the vendor;* and that after such forfeiture *the contract in itself is at an end,* and becomes extinct and is rendered void so as to bar any action thereon for any part of the money due thereunder."

In 20 Corpus Juris, p. 14, sec. 10, it is said:

"A remedy based on the theory of the affirmance of a contract or other transaction is inconsistent with a remedy arising out of the same facts and based on the

theory of its disaffirmance, or rescission, so that the election of either is an abandonment of the other. (Citing cases.) Where a party rescinds a contract the law does not permit him thereafter to make use of it as subsisting for the purpose of claiming damages, or for the purpose of recovery thereon.'' (Citing *Stinson v. Sneed* [Tex. Civ. App.], 163 S. W. 989, 991.)

In 27 R. C. L., p. 666, sec. 429, in discussing the "effect of rescission on further liability of purchaser,'' the author says:

"If the vendor exercises his option to declare the contract at an end, he cannot change his position and thereafter hold the purchaser liable to complete the purchase or pay any part of the unpaid purchase money. The remedy of the vendor by way of a cancellation of the contract and the continued liability of the purchaser for the purchase money are totally inconsistent, and the exercise of the former terminates any further liability of the purchaser for the purchase money. (Citing cases.) This is true as regards the liability of the purchaser for unpaid installments of the purchase money overdue at the time of the vendor's election to terminate the contract; and even though a judgment has been recovered against the purchaser for overdue unpaid purchase money, the subsequent termination of the contract by the vendor will relieve the purchaser from liability on the judgment.''

The first sentence of the above statement in 20 Corpus Juris, and the first two sentences in the above statement in 27 R. C. L., are quoted with approval in *Wollenberger v. Hoover*, 346 Ill. 511, at page 545. (See, also, *Ogden v. Larrabee*, 57 Ill. 389, 400; *Rose v. Rundall*, 86 Wash. 422, 425.)

In view of the allegations in plaintiff's amended statement of claim and the evidence introduced, and considering the authorities above referred to, we are

of the opinion that the court was justified in making such finding as was made, and in entering the judgment in question against plaintiff. It appears that plaintiff's suit, for the recovery from defendant of said 12 matured and unpaid instalments aggregating $1,080, was commenced on May 3, 1932; that the suit was based *upon the contract* and was in *affirmance* thereof; that on May 7, 1932 (four days after the commencement of the suit and while it was pending) plaintiff served upon defendants formal written notice in which it is stated that it had *"elected to forfeit and determine said contract"* and, *because of such determination,* demanded immediate possession of the property (which possession defendants then had), and further stated in the notice in substance that, if defendants failed immediately to surrender such possession, plaintiff would commence a forcible detainer proceeding under the statute; that thereafter plaintiff commenced such proceeding, prosecuted it and obtained judgment for possession of the property; and that, prior to the trial of the present case, plaintiff actually obtained possession of the property. Under these undisputed facts we think that plaintiff's attempt afterward to maintain the present action *on said contract,* notwithstanding the inconsistent position and actions taken by it, is contrary to the authorities and the law.

The judgment of the municipal court of July 12, 1933, appealed from, is affirmed.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.