2023 IL App (1st) 221707-U

THIRD DIVISION
August 16, 2023

No. 1-22-1707

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE**
**APPELLATE COURT OF ILLINOIS**
**FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| AMY SCHWARTZ, Individually and Derivatively on Behalf of LIONFISH, LLC, | ) Appeal from the<br>) Circuit Court of<br>) Cook County |
|     Plaintiffs and Counterdefendants-Appellants,<br> v. | )<br>) No. 2020 CH 5116 cons.<br>) |
| RANDALL SCHWARTZ, | )<br>) |
|     Defendant and Counterplaintiff-Appellee, | )<br>) |
| CHELONIIDAE, LLC, and LIONFISH, LP, | )<br>)<br>) |
|     Plaintiffs-Appellees,<br> v. | )<br>) No. 2021 CH 1518 cons.<br>) |
| LIONFISH, LLC, and AMY SCHWARTZ, | )<br>) |
|     Defendants and Counterdefendants-Appellants, | )<br>) |
| RANDALL SCHWARTZ, Individually and Derivatively on Behalf of LIONFISH, LLC, | )<br>)<br>)<br>) |
|     Plaintiffs and Counterplaintiffs-Appellees,<br>v. | )<br>)<br>) |
| AMY SCHWARTZ, | )<br>) |

No. 1-22-1707

Defendant and Counterdefendant-Appellant, )

_____ )_____

)

BARBARA SCOTT, )

)

Plaintiff-Appellee, )

v. )

)

CHELONIIDAE, LLC and LIONFISH, LP, ) Honorable
) Caroline Kate Moreland,

Defendants-Appellees. ) Judge, Presiding.

_____

JUSTICE D. B. WALKER delivered the judgment of the court.
Justices Reyes and R. Van Tine concurred with the judgment.

**ORDER**

¶ 1    *Held*: We reverse the trial court's grant of partial summary judgment in favor of Cheloniidae, LLC and Lionfish, LP, where the prior general partner was dissociated from the limited partnership, and the partnership agreement provided for the admission of a new general partner only upon a general partner's death, bankruptcy, incapacity, or removal.

¶ 2    Lionfish, LLC, was formed as the general partner of Lionfish, LP, a limited partnership. A dispute arose between Amy Schwartz (Amy) and Randall Schwartz (Randy), the only two members of Lionfish, LLC. Amy filed a complaint against Randy and requested the appointment of a receiver. Soon thereafter, members of the limited partnership appointed Cheloniidae, LLC, as the new general partner of the partnership. Amy, individually and on behalf of Lionfish, LLC, appeals the trial court's judgment finding that Cheloniidae is properly the general partner of Lionfish, LP. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    Amy and Randy operated a boutique hotel in the Turks and Caicos Islands. In order to purchase the hotel, they procured capital from investors through Lionfish, LP. In April 2017,

Lionfish, LP purchased property located at 16 Turtle Tail Drive, Providenciales, Turks and Caicos Islands. The property was acquired in Amy's name.

¶ 5     The limited partnership agreement provided that Lionfish, LLC, would serve as the general partner of Lionfish, LP. Amy and Randy each held 50% membership interest in Lionfish, LLC. Lionfish, LLC, was responsible for the general day-to-day operations of the partnership business. No operating agreement was drafted or executed regarding Lionfish, LLC.

¶ 6     Relevant to this appeal, the limited partnership agreement stated:

"2.02 Except as provided for in § 2.03 below, there shall be no new or additional General Partners admitted to the Partnership. ***

2.03. If the General Partner ceases to be a General Partner as a result of death, bankruptcy, incapacity, or removal, one or more new General Partner(s) may be admitted to the Partnership upon the affirmative vote of all the Limited Partners and upon such terms and conditions as the Limited Partners shall decide;

* * *

7.05. The Limited Partners shall not have the power to remove and expel any General Partner, unless the General Partner has committed an act of gross negligence, fraud, deceit, or wrongful taking that results in a loss of investment or a loss in operations as set forth in § 7.02. If a General Partner has committed an act of gross negligence, fraud, deceit, or wrongful taking, the General Partner may be removed by the affirmative vote of ninety percent (90%) in interest, not in number, of the Limited Partners. Written notice of the General Partner's removal shall be served by certified mail. ***"

¶ 7     On July 24, 2020, Amy, individually and derivatively on behalf of Lionfish, LLC, filed a complaint against Randy. The complaint alleged a violation of section 35 of the Illinois Limited

Liability Company Act (805 ILCS 180/35 (West 2022)) and breach of fiduciary duty. In the complaint, Amy requested the appointment of a receiver "to manage Lionfish, LLC while this suit is pending." An amended complaint was filed on November 13, 2020.

¶ 8     On July 30, 2020, approximately one week after Amy filed her initial complaint, members of the limited partnership executed a "Written Consent of the Limited Partners of Lionfish, LP." Partners comprising over 74% of the partnership interests signed the written consent, which stated that "in light of [Lionfish, LLC's] Receivership Request and Illinois law, the General Partner has been dissociated from the Partnership." The dissociation of Lionfish, LLC would dissolve the partnership unless limited partners owning a majority of the rights to receive distributions consented to "(a) continue the activities of the Partnership and (b) admit at least one general partner." They agreed it was in the best interests of the partnership to continue the business and, as such, they appointed Cheloniidae, LLC as the new general partner effective July 30, 2020.

¶ 9     On September 8, 2021, Randy, individually and derivatively on behalf of Lionfish, LLC, filed a counterclaim against Amy. His counterclaim alleged one count of violation of the Illinois Limited Liability Company Act and one count of breach of fiduciary duty. Randy also requested that a "receiver be appointed to manage LIONFISH, LLC, while the suit is pending."

¶ 10    In March 2022, Cheloniidae and Lionfish, LP filed a four-count complaint alleging (1) breach of contract against Lionfish, LLC; (2) breach of fiduciary duty against Amy; (3) Amy and Lionfish, LLC must provide an accounting of bank records, transactions, and inventory regarding the business; and (4) Cheloniidae is the lawful general partner of Lionfish, LP. This action was consolidated with Amy's complaint against Randy. Amy filed affirmative defenses to Cheloniidae's complaint.

¶ 11    On April 22, 2022, the trial court entered a default judgment against Lionfish, LLC, on Cheloniidae's claims because Lionfish LLC failed "to answer, appear or otherwise plead."

¶ 12    On April 29, 2022, Barbara Scott, a limited partner, filed a complaint against Cheloniidae and Lionfish, LP seeking a declaration that Lionfish, LLC remained the general partner of Lionfish, LP. Cheloniidae filed motions to strike Scott's complaint, to strike one of Amy's affirmative defenses, and for partial summary judgment on count IV of its complaint.

¶ 13    The trial court resolved all three motions in its October 31, 2022 order. It denied both of Cheloniidae's motions to strike. The court also, *sua sponte*, revisited its April 22, 2022 order and vacated the default judgment entered against Lionfish, LLC.

¶ 14    The trial court, however, granted Cheloniidae's motion for partial summary judgment on count IV of its complaint. The court noted that Amy did not dispute Lionfish, LLC's dissociation as general partner. The court further found that the limited partnership agreement did not address statutory dissociation. Therefore, the procedure for admitting a new general partner was governed by statute, which the limited partners followed in appointing Cheloniidae the new general partner. The court found nothing in the record that raised a question of material fact on this issue.

¶ 15    The trial court determined that Cheloniidae "is the lawful General Partner of Lionfish, LP." It also ordered Amy to transfer nominal ownership of the property held by the limited partnership from her name to Cheloniidae, LLC, and to vacate the property and transfer possession to Cheloniidae. The order stated that "there is no reason to delay appeal or enforcement" of the judgment as to count IV of Cheloniidae's complaint. Amy filed this timely appeal.

¶ 16                                II. ANALYSIS

¶ 17    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2022). Summary judgment is a drastic means of disposing of litigation and is proper only when the moving party's right to judgment is clear and free from doubt. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the trial court's grant of summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 18    Amy argues that the trial court erred in granting summary judgment on count IV of Cheloniidae's complaint. She contends that the partnership agreement requires the affirmative vote of all limited partners to admit a new general partner when the prior general partner is removed. Cheloniidae responds that because Lionfish, LLC, was dissociated as the general partner of Lionfish, LP, and the partnership agreement is silent on the issue of dissociation, the Act controls. Section 801(3)(B) of the Act provides that after the dissociation of a general partner, limited partners owning a majority of the rights to receive distributions can consent to "admit at least one general partner" in order to avoid dissolution of the partnership. 805 ILCS 215/801(3)(B)(i) (West 2022). Cheloniidae argues that the limited partners properly followed statutory procedure when they appointed Cheloniidae as the new general partner.

¶ 19    Generally, the Uniform Limited Partnership Act (Act) governs all partnerships formed in Illinois. See 805 ILCS 206/1206(b) (West 2022). If a partnership agreement exists, however, the agreement "governs the relations among the partners and between the partners and the partnership." 805 ILCS 215/110(a) (West 2022). Whether Cheloniidae was properly appointed the new general partner of Lionfish, LP is an issue that involves interpretation of the partnership agreement as well as interpretation of the Act.

¶ 20    A partnership is a contractual relationship controlled by the terms of the agreement under which it is formed. *Pielet v. Hiffman*, 407 Ill. App. 3d 788, 795 (2011). As such, contract law

applies when construing the terms of a partnership agreement. *Id.* Our primary objective when construing a contract is to effectuate the intent of the parties. *Thompson v. Gordon*, 241 Ill.2d 428, 441 (2011). To do so, we look to the plain language of the contract. *Id.* If the words are clear and unambiguous, we must give them their plain and ordinary meaning. *Id.* at 442. "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). Similarly, the primary rule of statutory construction is to give effect to the legislature's intent as evidenced by the statutory language, given its plain and ordinary meaning. *Bueker v. Madison County*, 2016 IL 120024, ¶ 13. Contract interpretation and statutory construction are questions of law appropriate for summary judgment. See *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 13; *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 433 (2005).

¶ 21 The Act provides that a "person is dissociated from a limited partnership as a general partner" if the person is "seeking, consenting to, or acquiescing in the appointment of a trustee, receiver, or liquidator of the person ***." 805 ILCS 215/603(6)(C) (West 2022). When a person is dissociated as a general partner, "the person's right to participate as a general partner in the management and conduct of the partnership's activities terminates." *Id.* § 605(a)(1). A "person" is defined in the Act as, among other entities, a "limited liability company ***." *Id.* § 102(16).

¶ 22 In her complaint, Amy requested the appointment of a receiver "to manage Lionfish, LLC while this suit is pending." Randy, the other member of Lionfish, LLC, also requested the appointment of a receiver for Lionfish, LLC. As a result, Lionfish, LLC was dissociated as the general partner pursuant to section 603(6)(C) of the Act. Plaintiffs do not dispute the statutory dissociation of Lionfish, LLC, the partnership's sole general partner.

¶ 23 The limited partnership agreement does not address the dissociation of a general partner.

The trial court therefore found that the Act applied. The Act provides that if no general partner remains after the dissociation of a general partner, "a limited partnership is dissolved" unless, within 90 days after the dissociation, limited partners owning a majority of the rights to receive distributions "consent to continue the activities of the limited partnership" and admit a new general partner "in accordance with the consent." *Id.* § 801(3)(B)(i), (ii). After the dissociation of the general partner, a person becomes the new general partner under the Act by complying with the provisions of section 801(3)(B). See 805 ILCS 215/401(2) (West 2022).

¶ 24 The trial court granted partial summary judgment because after Lionfish, LLC, became dissociated under the Act, the limited partners followed section 801(3)(B) and appointed Cheloniidae as the new general partner. The court concluded that, pursuant to the Act, Cheloniidae was the new general partner of Lionfish, LP.

¶ 25 We find, however, that although the partnership agreement did not address dissociation, it did cover the admission of new general partners to the partnership. Importantly, the agreement stated that "[e]xcept as provided for in § 2.03 below, *there shall be no new or additional General Partners admitted to the Partnership*." (Emphasis added.) Section 2.03 provided for the admission of a new general partner when the general partner "ceases to be a General Partner as a result of death, bankruptcy, incapacity, or removal *** upon the affirmative vote of all the Limited Partners ***."

¶ 26 Section 2.02 clearly manifested an intent to limit the admission of a new general partner to the circumstances set forth in section 2.03. Furthermore, the inclusion of "death, bankruptcy, incapacity, or removal" in section 2.03 indicated the parties' intent to admit a new general partner only under those conditions with the unanimous approval of the remaining limited partners. See *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 24 (finding that a guaranty

explicitly defining the indebtedness as debt incurred by a loan dated July 27, 2007, clearly evidenced an intent to narrow the scope of the guaranty). If the parties wanted to include dissociation under section 2.03, they could have done so. A strong presumption exists against provisions that could have been included in the contract but were not. *Id.*

¶ 27 Where the contract's language is clear and unambiguous, we determine the parties' intent exclusively from the express language of the contract. *ESP Global, LLC v. Northwest Community Hospital*, 2020 IL App (1st) 182023, ¶ 21. Read together, sections 2.02 and 2.03 of the agreement provide that a new general partner may be admitted to the partnership upon the "death, bankruptcy, incapacity, or removal" of Lionfish, LLC. Otherwise, no new or additional general partners shall be admitted to the partnership. Using section 2.03 to admit a new general partner when Lionfish, LLC was *dissociated* from the partnership ignores the limiting phrase of "death, bankruptcy, incapacity, or removal" in the provision. Courts will not interpret a contract in a manner that renders parts of it meaningless. *Id.*

¶ 28 We also disagree with Amy's argument that Lionfish, LLC was removed as the general partner, which would have triggered the voting procedure in section 2.03. Removal is addressed in section 7.05 of the partnership agreement, which gives limited partners the authority to remove, "by the affirmative vote of ninety percent (90%) in interest," a general partner that has "committed an act of gross negligence, fraud, deceit, or wrongful taking that results in a loss of investment or a loss in operations as set forth in § 7.02." There is nothing in the record showing that limited partners comprising 90% of the interests voted to remove or expel Lionfish, LLC before admitting Cheloniidae as the new general partner. Rather, the record shows that 74% of the partnership interests admitted Cheloniidae after Lionfish, LLC became dissociated under the Act. Amy has alleged no facts supporting the removal of Lionfish, LLC pursuant to the agreement.

¶ 29 "Summary judgment is a drastic remedy that should be granted only if the movant's right to judgment is clear and free from doubt." *Davis v. Pace Suburban Bus Division of the Regional Transportation Authority*, 2021 IL App (1st) 200519, ¶ 24. We find, however, that Cheloniidae had no right to judgment at all.

¶ 30 The partnership agreement provided for the admission of new general partners and, therefore, it "govern[ed] the relations among the partners and between the partners and the partnership" on this issue. 805 ILCS 215/110(a) (West 2022). The agreement explicitly stated that no new or additional general partners will be admitted to the partnership, "[e]xcept as provided for in § 2.03." Section 2.03 provided for the admission of a new general partner only upon the "death, bankruptcy, incapacity, or removal" of Lionfish, LLC. Since section 2.03 did not include dissociation, Lionfish, LLC's dissociation could not be the basis for admitting a new general partner. Contrary to the unambiguous terms of the agreement, the limited partners appointed Cheloniidae as the new general partner after Lionfish, LLC was dissociated from the partnership. Accordingly, the trial court erred in finding that Cheloniidae was the new general partner of Lionfish, LP, and in granting partial summary judgment in favor of Cheloniidae.

¶ 31                                    III. CONCLUSION

¶ 32 For the foregoing reasons, we reverse the judgment of the trial court and remand the matter for further proceedings.

¶ 33 Reversed and remanded.